CRAIG ET AL. v. THE PUEBLO PRESS PUBLISHING COM-
PANY.

PLEADING—LIBEL.

It is not necessary, in actions for libel or slander, to state in the com-
plaint any extrinsic facts for the purpose of showing the application
of the defamatory matter to the plaintiff. It is sufficient to state
generally that the same was published or spoken concerning the
plaintiff.

*Error to the District Court of Pueblo County.*

Mr. J. J. McFEELY, for plaintiffs in error.

Messrs. DRAKE & COLLINS and Mr. W. T. JENISON, for
defendant in error.

THOMSON, J., delivered the opinion of the court.

The complaint, after alleging that the defendant, The
Pueblo Press Publishing Company, was a corporation, en-
gaged in the printing and publishing of a newspaper in the
county of Pueblo, having a general circulation in that county,
and known as the " Pueblo Press," proceeds as follows :

" Plaintiffs further say that they are a company composed
of Henry Craig and J. D. Sexton, doing business under the
name and style of Craig & Sexton, and they are now and
have been for six or seven months last past, engaged in the
business of making and selling tomales in the city of Pueblo,
county of Pueblo, and state of Colorado ; that on the 28th
day of November, 1891, to be referred to hereafter, plaintiffs
were and had been for some time immediately prior thereto,
controlling, owning and doing all, or almost all, of said busi-
ness then and there being done within said city of Pueblo,
county and state aforesaid ; that plaintiffs had by strict at-
tention to business, honesty and fair dealing towards their
customers, built up said business until the daily receipts

therefrom aggregated the sum of about $10.00 per day net profit; and that plaintiffs are and from their youth have been of good fame and reputation among their neighbors for honesty and propriety of conduct, and are and ever have been free from the atrocious crime of selling diseased or unwholesome articles of food and never were suspected of that crime, but have always supported themselves by honest and industrious attention to their said business and calling. Nevertheless, the defendant, not being ignorant of the premises, but fraudulently, maliciously and wickedly contriving to injure, blacken and defame the plaintiffs in their good fame and reputation, and injure them in their trade and expose them to the pains and penalties prescribed by law for selling diseased and unwholesome articles of food, did on November 28, 1891, at the city of Pueblo, county of Pueblo, state of Colorado, utter, publish and proclaim in the English language, through the columns of said newspaper called the ' Pueblo Press,' as aforesaid, the following false, malicious and scandalous words of and concerning the plaintiffs, to wit: ' That fellow over there (meaning the plaintiffs) is dishing out to a confiding and unsuspecting public, food rotten and poisonous as well (meaning the said plaintiffs, in the business as aforesaid, was selling rotten and poisonous food to the public, and that) I (meaning the defendant) would not eat one of them for a $5.00 bill (meaning one of the tomales being sold by these plaintiffs as aforesaid). That nearly the whole business of Pueblo (meaning thereby the tomale business) is owned and controlled by one company, its members being Dagos (meaning thereby these plaintiffs). The tomales (meaning thereby the tomales made and sold by these plaintiffs) were made of hotel offal and other vile meats, mixed with meal (meaning thereby that these plaintiffs make and sell tomales, in their business as aforesaid, of hotel offal and other vile meats). Sometimes the meat actually stinks (meaning thereby the meats used by the plaintiffs in making tomales for sale in their business as aforesaid) but as the purchaser gets the tomales (meaning thereby those

who purchase tomales of these plaintiffs) served hot, the odor of meal predominates, and the stink is not noticed (meaning thereby the stink of the vile meats used in making said tomales by plaintiffs as aforesaid). Let them once get cold, and try to eat a tomale, and you will soon find out (meaning thereby that, if said tomales sold by plaintiffs as aforesaid got cold before eating, you would find them stinking, from being made out of vile meats as aforesaid). That now one might expect to hear of chicken tomales (meaning thereby that chicken tomales would be made by these plaintiffs). The chicken part (meaning the part of said tomales made out of chicken by these plaintiffs) would be the offal of Thanksgiving meals at private residences, hotels and restaurants.' Plaintiffs further aver that on December 3, 1891, at the city of Pueblo, county and state aforesaid, in aforesaid paper, the defendant did utter, publish, and proclaim the following false, scandalous, and malicious words of and concerning the plaintiffs, to wit: 'This paper (meaning thereby aforesaid paper published by defendant) has told the truth, and in fact only half of what it knows (meaning thereby the aforesaid malicious, false, and scandalous words published by it on November 28, 1891, were true). A prominent chemist is now analyzing three of the alleged tomales (meaning thereby said tomales made by said plaintiffs), and as soon as his work (meaning said chemist's work as aforesaid) is finished the result will be published. It is also known where three barrels of chickens were bought for a dollar a barrel because they were tainted (meaning thereby that said plaintiffs had bought said chickens for use in making said tomales). It can also produce evidence (meaning thereby that said defendant can produce evidence), sworn, from seven men made sick by eating tomales' (meaning thereby that said men were made sick by eating tomales bought of these plaintiffs, because of the said tomales having been made out of vile meats as aforesaid), by means of which false, scandalous and malicious words the plaintiffs have been greatly injured in their good name and reputation, and have suf-

fered great anxiety of mind, and have been exposed to a prosecution for selling articles of food that was diseased and unwholesome, and have been greatly damaged in their business, to the damage of the plaintiffs in the sum of $5,000."

The answer of the defendant admitted that it was a corporation, engaged in printing and publishing a newspaper in Pueblo county, having a general circulation in that county, but denied all the other averments of the complaint. The cause proceeded to trial and evidence for the plaintiffs was given which showed the publication by the defendant of the matters complained of. The evidence also tended to prove that the publication was intended to apply to the plaintiffs, that it was understood by the public as applying to them, and that as a consequence their business suffered serious injury. It was shown that the plaintiffs were not Dagos, that they had not been classed as Dagos among their neighbors or by the public, that they were the only firm in the city engaged in the manufacture and sale of tomales, and that none were made or sold by Dagos. At the close of plaintiffs' case the defendant moved the court for a judgment of nonsuit. The motion was sustained, and judgment given for the defendant, to reverse which the plaintiffs prosecute this appeal.

The only question we are required to determine relates to the sufficiency of the complaint. The libelous character of the published words is not, and cannot very well be, questioned; but it is contended that on their face they do not refer to the plaintiffs, and that the complaint does not contain the necessary averments to show the application of the defamatory matter to them. The persons alluded to in the libelous publication were termed "Dagos," and the plaintiffs were not Dagos, but the persons intended were otherwise described in such manner that their identity could easily be fixed. In reference to these persons it was stated in the publication that nearly the whole business of Pueblo was owned and controlled by one company. From this description it could not have been difficult for the citizens of Pueblo to ascertain what persons were meant, notwithstand-

ing they were not named, and notwithstanding the term "Dagos" was applied to them. Section 68 of the code provides that in actions for libel or slander it shall not be necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the defamatory matter out of which the cause of action arose, but it shall be sufficient to state generally that the same was published or spoken concerning the plaintiff. It has been held under a similar statute that even where the person against whom the libelous charge is made is so ambiguously described that, without the aid of extrinsic facts, his identity cannot be ascertained, it is sufficient to state generally that it was published concerning the plaintiff and that the averments and colloquium which were formerly necessary to connect the libel with the plaintiff may be dispensed with. *Petsch v. Dispatch Pr. Co.*, 40 Minn. 291.

The complaint avers that the words in question were published of and concerning the plaintiffs, and upon the authority of the case cited no further allegation was requisite to apply the words to the plaintiffs; but, conceding that this averment is not sufficient in itself, and that the allegation of some extrinsic fact or facts, identifying the plaintiffs with the persons alluded to in the publication, was necessary, we find a statement in the complaint which fully satisfies the requirement. It is set forth, by way of inducement, that at the time of the publication the plaintiffs were, and had been for some time previously, controlling, owning and doing all, or almost all, of the business mentioned, which was being done within the city of Pueblo. This is substantially the language used in the publication to describe the persons to whom it referred, and is a sufficient identification of the plaintiffs as being those persons. We are of the opinion that the defendant's objection to the complaint is not well taken; and as the evidence given was ample, in the absence of any showing by the defendant, to authorize a verdict for the plaintiffs, the court erred in granting the nonsuit. The judgment must be reversed.

*Reversed.*